IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DIANE F. WHITE,<br><br>Plaintiff<br><br>v.<br><br>OFFICER TODD R. CHANCE;<br>UNKNOWN SUPERVISING<br>OFFICER; and<br>POLICE CHIEF CHARLES G.<br>KELLER,<br><br>Defendants | CIVIL NO. 1:CV-09-1642<br><br>J. Rambo<br><br>FILED<br>HARRISBURG, PA<br><br>MAR 0 1 2012<br><br>MARY E. D'ANDREA, CLERK<br>Per _____<br>Deputy Clerk |

## MEMORANDUM

Before the court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). (Doc. 36.) For the reasons that follow, the motion will be granted in part and denied in part.

I.   **Discussion**

   A.   **Facts**[1]

At all times relevant to the instant case, Defendant Todd R. Chance was a police officer for the City of Harrisburg, Pennsylvania. (Defs.' Statement of Material Facts ("SMF"), ¶ 2.) Defendant George G. Kellar was the Chief of Police for the City of Harrisburg. (*Id.*, ¶ 3.) Plaintiff Diane F. White was a citizen of

---

[1] Normally, when deciding a motion for summary judgment the court will rely on the facts enumerated in the respective parties statement of material facts and counter-statement of material facts, and cite to the record when those facts are genuinely disputed. However, in the instant case, Plaintiff has failed to provide a brief in opposition to the motion for summary judgment *or* a counter-statement of material facts, despite a court order directing her to do so. (Doc. 43.) Therefore, the court will consider Defendants' statement of material facts to be uncontested. *See Miller v. Ashcroft*, 76 F. App'x 457, 460 (3d Cir. 2003) (treating facts as uncontested due to plaintiff's failure to file a timely counter-statement of material facts).

Harrisburg who resided at 537 South 16th Street, Harrisburg, Pennsylvania. (*Id.*, ¶ 1.)

On September 1, 2007, Plaintiff obtained a permit for, and organized a block party on South 16th Street, Harrisburg, Pennsylvania. (*Id.*, ¶¶ 7, 8.) The theme was "Back to School" and it was geared towards children and young adults in the neighborhood. (*Id.*, ¶ 9.) Plaintiff had been hosting this party annually since 2001, however on 2007 the party organizers needed a different street, apart from the usual street, blocked off. Due to a lack of resources, the city was unable to provide Plaintiff with barricades. (*Id.*, ¶ 12.) The city did provide "No Parking" signs and other materials to assist in cordoning off the area. (*Id.*, ¶ 13.) However, due to the lack of actual barricades, the individuals running the party used vehicles to block off the streets. (*Id.*, ¶ 14.) The streets were blocked off by either signs or vehicles between Catherine Street and Berryhill Street. (*Id.*, ¶ 15.)

At approximately 4:30 p.m. that day, the Harrisburg Police Department ("HPD") started to receive complaints regarding various incidents near the area where the block party was taking place. (*Id.*, ¶ 17.) The first complaint received was regarding loud noise coming from the 1600 block of Berryhill Street. (*Id.*) At approximately 9:06 p.m., Officer Chance was dispatched to the area of 16th Street and Berryhill Street due to complaints from residents that the streets were being blocked off by cars and tables and that people were using profanity at the residents when they tried to get in or out of the area. (*Id.*, ¶ 18.) He was told at this time, although it is unclear from whom, that the block party would be ending soon, so he left. (*Id.*, ¶ 19.)

Shortly thereafter, the HPD received two complaints about fireworks going off in the 1600 block of Berryhill Street. The fireworks had set off a security system. (*Id.,* ¶ 20.) At 9:25 p.m., HPD received another complaint that vehicles were stopped in the middle of Catherine Street thereby preventing other vehicles from passing through. (*Id.,* ¶ 21.) Officer Chance was dispatched to the area again after this complaint. (*Id.,* ¶ 22.)

Once on the scene, Officer Chance found an unoccupied vehicle parked in the middle of the road at South 16th Street and Catherine Street, along with a woman in a vehicle behind it who was unable to get around the parked vehicle. (*Id.,* ¶ 23.) When the owner of the parked vehicle finally returned, a verbal altercation occurred between the vehicle's owner and the woman who was attempting to pass his vehicle. (*Id.,* ¶ 24.) Officer Chance asked the owner of the parked vehicle to move it aside so that the woman could pass. Officer Chance also stated he wished to speak with the owner of the parked vehicle. (*Id.,* ¶ 25.) However, before Officer Chance was able to speak with the owner of the parked vehicle, Plaintiff approached Officer Chance. (*Id.,* ¶¶ 26, 27.)

Plaintiff informed Officer Chance that she was running the block party, had a valid permit for it and that "everything was fine." (*Id.,* ¶¶ 27, 28.) Officer Chance informed Plaintiff that he had received several complaints about the party, and he was there responding to a parking complaint. (*Id.,* ¶ 29.) Plaintiff responded by saying "that's bullshit."[2] (*Id.,* ¶¶ 30, 31.) Officer Chance asked Plaintiff to "back off," then asked that she step onto the sidewalk so he could talk to her while not

---

[2] Plaintiff admits she made such a statement but claims it was in response to Officer Chance accusing her of being intoxicated. (Doc. 38, Ex. B, at 96:4.)

3

standing in the middle of the street. (*Id.*, ¶¶ 32, 33.) At this point, the parties dispute who was yelling and cursing at who, although both parties agree there were children in the vicinity and obscene language was being used. (*Id.*, ¶¶ 34, 36, 37 & 38.) Officer Chance claims he took Plaintiff into custody because she would not stop using profanity in an area where numerous small children were present. (*Id.* ¶ 40.) Plaintiff claims that while on the sidewalk, Officer Chance told her "to shut the f— up before I take you downtown for drunk and disorderly." (Doc. 28, Ex. B, at 95:24-96:1.) Plaintiff claims she responded with "that's crazy or that's bullshit" before Officer Chance grabbed her arm and initiated the arrest. (*Id.*, at 96:3-4.)

Although the parties differ on the basis of why each acted in the way they did during the ensuing struggle, there is no genuine dispute that a struggle took place during which Plaintiff was pepper sprayed and sustained minor injuries before being transported to the HPD. Plaintiff claims she was struggling, not because she was resisting arrest, but because Officer Chance was choking her, she did not know why she was being arrested, and she thought Officer Chance "was losing it." (*Id.*, at 96:16, 97:6.) Plaintiff admits she would not remain still, but claims it was simply "to keep the pain away." (*Id.*, at 96:12.) Officer Chance claims that when he tried to arrest Plaintiff, he was able to secure one wrist with the handcuffs, but then Plaintiff pulled her other arm away from him. (SMF, ¶ 42.) He then leaned Plaintiff against a small fence to try to secure her free arm, at which point Plaintiff wreathed away from him and grabbed the fence with both hands. (*Id.*, ¶¶ 44, 45.) When Officer Chance tried to pry Plaintiff's hands off the fence, he claims she turned and spat in his face. (*Id.*, ¶ 46.) Officer Chance claims he was finally able to get Plaintiff off of the fence and onto the ground at which point Plaintiff tucked her

arms under her body. (*Id.*, ¶¶ 48, 49.) Still unable to gain control of Plaintiff's arms, and unsure if Plaintiff had a weapon, Officer Chance sprayed her face with pepper spray hoping she would release her arms in an attempt to wipe her eyes. (*Id.*, ¶¶ 50, 51.) When Plaintiff continued to fail to release her arms, Officer Chance sat on her back until another officer arrived and the two were able to successfully handcuff Plaintiff. (*Id.*, ¶¶ 52, 53.) During a search incident to Plaintiff's arrest, a small amount of marijuana was found in her pocket. (*Id.*, ¶ 56.)

After consulting with the Assistant District Attorney on duty, Plaintiff was charged with aggravated assault, resisting arrest, disorderly conduct and possession of a small amount of marijuana and paraphernalia. (*Id.*, ¶ 59.) She eventually pled no contest to the paraphernalia charge. (*Id.*, ¶ 60.)

### B. Procedural History

Plaintiff filed her initial complaint *pro se* on August 25, 2009. (Doc. 1.) On November 2, 2009, Plaintiff filed a motion to join additional parties (doc. 12), which the court construed as a motion to file an amended complaint (doc. 14). The motion was granted and the court gave Plaintiff until November 24, 2009, to file her amended complaint. On November 23, 2009, counsel entered an appearance for Plaintiff. (Doc. 15.) This same day, Plaintiff requested an extension of time within which to file an amended complaint. (Doc. 16.) This motion was granted on November 24, 2009. (Doc. 17.)

On February 26, 2010, Plaintiff filed an amended complaint. (Doc. 21.) On October 14, 2011, Defendants filed a motion for summary judgment, (doc. 36), and brief in support, (doc. 37). On October 21, 2011, Defendants filed a suggestion of bankruptcy. (Doc. 39.) This same day, the case was stayed pending the outcome

of the City of Harrisburg's bankruptcy case. (Doc. 41.) On December 7, 2011, the stay was lifted. (Doc. 42.) Having received no response to the motion for summary judgment, the court issued an order to show cause by January 12, 2012, why Defendants' motion should not be deemed unopposed. (Doc. 43.) Plaintiff did not respond, as such, the motion is now ripe for disposition.

## II.       Legal Standard

Federal Rule of Civil Procedure 56 sets forth the standard and procedures for the grant of summary judgment. Rule 56(a) provides, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law. Fed R. Civ. P. 56(a)[3]; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323. A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the nonmoving party. *Id.* at 248. When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party," and draw all reasonable inferences in favor of the same. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005), *cert denied*, 546 U.S. 1094 (2006).

---

[3] *See* Fed. R. Civ. P. 56, Advisory Comm. Note (2010 Amendments) (The frequently cited standard for summary judgment is now set forth in Rule 56(a) rather than Rule 56(c)(2010). The Advisory Committee explains that despite the language change, "[t]he standard for granting summary judgment remains unchanged" and "[t]he amendments will not affect continuing development of the decisional law construing and applying these phrases.").

6

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). The nonmoving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotations omitted); *see also Saldana v. Kmart Corp*, 260 F.3d 228, 232 (3d Cir. 2001) (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

### III.  Discussion

Plaintiff claims Officer Chance violated her constitutional rights by using excessive force when arresting her, in violation of the Fourth Amendment. Plaintiff also claims Officer Chance violated her First Amendment rights by using

"excessive force in effecting her arrest without due cause and thereby depriving her of free speech in her responsive speech to his derogatory statements." (Compl. ¶ 36.) In addition, she claims an "unknown supervisor" and Defendant Kellar were deliberately indifferent to the risk of harm to Plaintiff when Officer Chance used excessive force in arresting her.[4] Plaintiff has only sued the Defendants in their individual capacities.

> Section 1983 states in relevant part:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n.9 (1999) (internal quotation omitted). To prevail in an action under § 1983, a plaintiff must demonstrate: (1) a violation of a right secured by the Constitution and the laws of the United States and (2) that the alleged deprivation was committed by a person acting under color of state law. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993). "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to

---

[4] Although not explicitly mentioned in the complaint, the court assumes Plaintiff is bringing her constitutional claims pursuant to 42 U.S.C. § 1983.

determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Nicini*, 212 F.3d at 806 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).

### A. <u>Excessive Force</u>

To establish an excessive force claim under the Fourth Amendment, "a plaintiff must show both that a seizure occurred and that it was unreasonable." *Lynn v. Schertzberg*, 169 F. App'x 666, 669 (3d Cir. 2006) (citing *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004)). "To determine reasonableness, the Court asks whether the officer's conduct was 'objectively reasonable' in light of the totality of the facts and circumstances." *Id.* Factors to be considered include, but are not limited to: whether the suspect posed an immediate threat to the officers, whether the suspect was actively resisting or attempting to evade arrest, and/or whether the suspect appeared to be violent. *Id.* (citing *Graham v. Conner*, 490 U.S. 386, 396 (1989); *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997)).

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation.

*Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004) (citing *Graham*, 490 U.S. at 396-97). Although questions of reasonableness are usually best resolved by a jury, a defendant can still win on summary judgment if a court concludes that an officer's use of force was objectively reasonable under the circumstances. *Id.*

Here, there appears to be a genuine issue of material fact regarding whether Officer Chance's use of force was, in fact, objectively reasonable. Officer

Chance claims Plaintiff was using obscene language in the presence of children, where Plaintiff claims it was Officer Chance who was yelling profanities. Furthermore, while it is clear that some sort of struggle took place and that pepper spray was used to subdue Plaintiff, questions remain regarding both parties' role in the struggle and whether the use of pepper spray was justified based on Plaintiff's conduct. The court is not comfortable granting summary judgment on such "he said/she said" factual discrepancies.[5]

The supervisory liability of the "unknown supervisor" and Police Chief Keller is a different matter. To establish supervisory liability, a Plaintiff must show that the supervisor directed others to violate a constitutional right, and this violation subsequently occurred, or that a supervisor knew of, and did nothing to prevent, a constitutional violation from taking place. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). Here, the record is devoid of any evidence that shows Defendant Keller in any way directed Officer Chance to violate Plaintiff's constitutional rights. As such, summary judgment will be granted as to Defendant Keller. Likewise, summary judgment will be granted for the "unknown supervisor." At this stage in the litigation, Plaintiff must positively identify who a Defendant is before the case can logically proceed to trial.

---

[5] The court is hesitant to let this case go forward in light of Plaintiff's counsels' lack of diligence by not only failing to respond to Defendants' motion for summary judgment but also failing to respond to this court's order to show cause. However, because the court is taxed with pursuing justice and not babysitting lawyers, the case will proceed based on the factual differences in Plaintiff and Officer Chance's depositions. It should be noted however, that the court will not tolerate a failure to abide by remaining deadlines in this case.

### B. First Amendment

As stated above, Plaintiff claims Officer Chance "violated Plaintiff's rights under the 1st Amendment to the U.S. Constitution by his use of excessive force in effecting her arrest without due cause and thereby depriving her of free speech in her responsive speech to his derogatory statements, profanity and obscenities, and which excessive force caused her aforesaid injuries." (Compl. ¶ 36.) This appears to be a mere recitation of the basic elements of a cause of action and is not appropriate at the summary judgment stage. Moreover, the court fails to see how it is a claim distinct from Plaintiff's Fourth Amendment excessive force claim. The court will not allow this claim proceed to trial based solely on this recitation in the complaint and without any record evidence to support it. As such, summary judgment will be granted as to Plaintiff's First Amendment free speech cause of action.

## IV.     Conclusion

For the above mentioned reasons, Defendants' motion for summary judgment will be granted in part and denied in part. The motion will be granted as to Defendants "unknown supervisor" and Keller. The motion is also granted as to Plaintiff's First Amendment claim. The motion will be denied as to the Fourth Amendment excessive force claims against Officer Chance because disputed facts remain regarding the reasonableness of Officer Chance's conduct  An appropriate order will be issued.

SYLVIA H. RAMBO
United States District Judge

Dated: March   /   , 2012.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DIANE F. WHITE,** | : CIVIL NO. 1:CV-09-1642 |
| **Plaintiff** | : |
| v. | : |
| **OFFICER TODD R. CHANCE;** <br> **UNKNOWN SUPERVISING** <br> **OFFICER; and** <br> **POLICE CHIEF CHARLES G.** <br> **KELLER,** | : <br> : <br> : J. Rambo |
| **Defendants** | : |

## ORDER

For the reasons mentioned in the accompanying memorandum of law, it is **HEREBY ORDERED** that Defendants' motion for summary judgment (doc. 36) is **GRANTED** in part and **DENIED** in part as follows:

1) the motion is **GRANTED** as to Defendants "unknown supervisor" and Keller.

2) the motion is **GRANTED** with respect to Plaintiff's First Amendment claim (count II).

3) the motion is **DENIED** in all other respects.

A new scheduling order **WILL BE ISSUED** separately. The clerk of court is **DIRECTED** to **DEFER** the entry of judgment for Defendants Kellar and "unknown supervisor" until the close of this case.

/s/ Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: March 1, 2012.